**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 19-3193
_____

UNITED STATES OF AMERICA

v.

YASMIL MINAYA,
also known as Animal,
Appellant
_____

On Appeal from the United States District Court
for the District of New Jersey
(D.C. Criminal No. 2:17-cr-00359-001)
District Judge: Honorable Kevin McNulty
_____

Submitted Under Third Circuit L.A.R. 34.1(a)
September 8, 2020
_____

Before: CHAGARES, HARDIMAN, and GREENAWAY, JR., <u>Circuit</u> <u>Judges</u>

(Opinion filed: September 11, 2020)
_____

OPINION[*]
_____

---

[*] This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7 does not constitute binding precedent.

CHAGARES, Circuit Judge.

Yasmil Minaya was charged with, and convicted of, possession with intent to distribute more than one kilogram of heroin and conspiracy to do the same. On appeal, he argues that the District Court's limiting of witnesses at a suppression hearing violated his due process rights; that the court should have suppressed foreign wiretap evidence presented against him; that the court erred in denying his motion for a new trial based on cumulative error; and that his sentence was procedurally and substantively unreasonable. For the following reasons, we will affirm.

## I.

We write for the parties and so recount only the facts necessary to our decision. In 2007, Minaya began working with an individual named Orlando Luna Cruz selling 100-gram quantities of heroin. Their operation eventually grew to involve numerous co-conspirators in several countries. From January 2015 to January 2017, the conspiracy imported approximately 118 kilograms of heroin into the United States.

Cruz lived in the Dominican Republic and made bulk purchases of up to 30 kilograms of heroin, which were transported from Mexico through Los Angeles to New Jersey. In 2014, Dominican law enforcement obtained approval from a Dominican court to wiretap Cruz's phones. The wiretaps picked up conversations about drug trafficking between Cruz and individuals in New York and New Jersey. Dominican officials informed the Drug Enforcement Administration ("DEA") and began passing along information from the wiretaps.

New Jersey police executed four separate seizures yielding large of amounts of drugs, money, or both. One of these also yielded phones and notebooks containing information about the criminal enterprise. After one of the seizures, Minaya and Cruz had a lengthy conversation about the confiscated drug shipment.

Minaya was charged in a two-count indictment with possession with intent to distribute more than one kilogram of heroin, 21 U.S.C. § 841(a)(1), (b)(1)(A), and conspiracy to do the same, 21 U.S.C. § 846. Minaya filed an omnibus pretrial motion, including a challenge to the admissibility of the evidence gleaned from the Dominican wiretaps, which argued that the wiretap evidence was the result of impermissible cooperation between United States and Dominican authorities. The District Court held a limited hearing on the motion. At the hearing, DEA Special Agent Roxana Pulido, who is based at the agency's Santo Domingo office and who is familiar with the Dominican investigation of Cruz, testified that the DEA has no power to obtain wiretaps in the Dominican Republic and that it played no role in seeking the wiretaps on Cruz. The court permitted Minaya to cross examine Pulido, but decided not to grant Minaya's request to call someone from the Dominican Attorney General's office or the DEA Santo Domingo office supervisor to testify. The court reasoned that it would determine if Pulido's testimony led to further questions about the nature of the wiretap first. Minaya agreed to the District Court's limitations on the hearing.

The District Court ultimately denied Minaya's motion to suppress the wiretap evidence. The court noted that the DEA reports about information gleaned from the wiretaps "explicitly or impliedly stated that the [DEA and Dominican authorities] acted

3

together." United States v. Minaya, Civ. No. 17-359 KM, 2019 WL 1615549, at *11 (D.N.J. Apr. 16, 2019). But the court concluded that United States and Dominican authorities did not engage in an impermissible "joint venture," which would preclude the admission of the wiretap evidence, because United States authorities "did not initiate" the Cruz wiretap investigation, "were not involved in the decision to seek" the wiretaps, "did not control, direct, or supervise" the wiretaps, and "did not participate in the implementation" of the wiretaps or "the recording of conversations." Id. at *10–11.

At trial, Cruz and another co-conspirator testified about the criminal enterprise; a Dominican agent testified about the Dominican investigation of Cruz and the wiretaps; DEA agents, New Jersey police, and Federal Bureau of Investigation agents testified about surveilling the conspirators; and the Government presented numerous taped conversations among the conspirators. The jury found Minaya guilty on both counts in the indictment. The District Court denied Minaya's motion for reconsideration of his motion to suppress the wiretap evidence and denied his motion for a new trial.

For sentencing, the Probation Office calculated an offense level of 46, resulting in a base offense level of 43 — the Guidelines maximum. The District Court adjusted this downward, finding that Minaya was a "manager or supervisor" of the enterprise, not an "organizer or leader" and that he was not directly involved in importing drugs. See U.S.S.G. § 3B1.1. The District Court then granted a downward variance from life to 288 months to account for lower drug quantity stipulations in the plea agreements of some of Minaya's co-conspirators. Minaya did not object to the explanation of his sentence or the

4

District Court's consideration of the 18 U.S.C. § 3553(a) factors. Minaya timely appealed his judgment of conviction and sentence.

On appeal, Minaya argues that: (1) the witness procedure at his suppression hearing violated his due process rights; (2) the District Court erred in admitting the foreign wiretap evidence and in denying his follow-up motion to reconsider suppressing the wiretap evidence; (3) the District Court erred in denying his motion for a new trial; and (4) his sentence was procedurally and substantively unreasonable. We find each argument unavailing.

First, Minaya argues that the District Court violated his due process rights by limiting the witnesses ordered to appear at the suppression hearing on the foreign wiretaps and limiting his cross examination of Special Agent Pulido. We are unpersuaded. Minaya agreed to the witness procedures that the District Court used at the suppression hearing, so he waived his right to now object to those procedures on appeal. See United States v. James, 955 F.3d 336, 344–45 (3d Cir. 2020). Regardless, the District Court did not abuse its discretion in either limiting the scope of the hearing or limiting Minaya's opportunity to cross examine Special Agent Pulido. See United States v. Skulsky, 786 F.2d 558, 562 (3d Cir. 1986) (applying the abuse of discretion standard for limiting the scope of an evidentiary hearing); United States v. Fattah, 914 F.3d 112, 179 (3d Cir. 2019) (same for limiting cross examination). The District Court reasoned

---

[1] The District Court had jurisdiction under 18 U.S.C. § 3231, and we have appellate jurisdiction under 28 U.S.C. § 1291 and 18 U.S.C. § 3742(a).

that it wanted to hear from Special Agent Pulido, who had firsthand knowledge of the wiretaps and the investigation into Cruz, before deciding whether to allow Minaya to call more witnesses who might not be needed to enable the court to rule on the motion. Further, Minaya did not object to the court's limiting his time to cross examine Special Agent Pulido. And Minaya spent his entire opportunity to do so questioning Pulido about the wording of the DEA reports on the Cruz wiretaps in an attempt to show impermissible cooperation. If Minaya failed to elicit the testimony that he sought, the fault is his own.

Second, Minaya asserts that the District Court should have suppressed the evidence gleaned from the wiretaps because it was the fruit of an impermissible "joint venture" between United States and Dominican authorities. Minaya argues that the court improperly assessed who led and executed the wiretap, discounted DEA reports that portrayed the wiretap as a cooperative investigation, and ignored the fact that DEA agents were frequently "in the wire room" with Dominican authorities. Reply Br. 7 (quotation marks omitted).

We conclude that the District Court did not abuse its discretion in admitting the wiretap evidence. Foreign wiretap evidence ordered by "foreign officials acting on their own to enforce foreign law" is admissible in federal criminal cases unless (i) the conduct of the foreign officials "shock[s] the . . . conscience" or (ii) the foreign officials are acting as "agents . . . of United States law enforcement" or are cooperating with United States agents in a way "designed to evade constitutional requirements" — what some of our sister Courts of Appeals refer to as an impermissible "joint venture." United States v.

6

Maturo, 982 F.2d 57, 60–61 (2d Cir. 1992) (quotation marks omitted); see also United States v. Callaway, 446 F.2d 753, 755 (3d Cir. 1971) (holding that the Fourth Amendment exclusionary rule does not apply to searches in a foreign country which "were conducted by foreign law enforcement . . . who were not acting in connection or cooperation with" United States "authorities[,] and the conduct involved was not the type that would shock the conscience of our courts").

We have never adopted the "joint venture" doctrine, but, even if we had, Minaya's arguments fall short. We agree with the District Court that Dominican officials initiated the investigation of Cruz and independently sought and executed the wiretaps. Minaya failed to present any witnesses or other evidence indicating that United States authorities controlled or were "active participants in the [wiretaps] operation." United States v. Valdivia, 680 F.3d 33, 52 (1st Cir. 2012). Standing alone, foreign law enforcement officials sharing information gleaned from their own activities with United States authorities — even if cloaked in cooperative terms in agency reports — is not indicative of an impermissible joint venture, and thus, the District Court did not abuse its discretion in admitting the wiretap evidence. For the same reasons, we discern no error in the District Court's denial of Minaya's motion to reconsider the suppression of the wiretap evidence.

Third, Minaya asserts that the District Court should have granted his motion for a new trial based on cumulative error. We are unconvinced. Some of Minaya's arguments are conclusory and unsupported by the record (such as his contention that the DEA reports were "false" and the seizures of drugs and money "pretextual," Minaya Br. 30);

7

some are factually inaccurate (such as that no mutual legal assistance treaty exists between the United States and the Dominican Republic; and others are difficult to discern and marginally relevant (such as one argument based on a later-corrected attribution error in a transcript). Regardless, we cannot conclude that the District Court abused its discretion in denying Minaya's motion for a new trial because Minaya fails to show that any purported errors affected the outcome of the trial, especially in the face of the overwhelming evidence of his guilt.[2]

Finally, Minaya argues that his sentence is both procedurally and substantively unreasonable. He contends that the District Court erred in agreeing with the Probation Office's base offense level of 38, in adding three points for an aggravated role, and in adding two points for obstruction. Minaya also argues that his sentence is based on "erroneous facts," is harsher than those of his co-conspirators, and resulted from the court's failing to consider meaningfully the 18 U.S.C. § 3553(a) factors. Minaya Br. 45, 52. We disagree.

To satisfy procedural reasonableness, a sentencing court must "(1) correctly calculate[] the defendant's advisory Guidelines range; (2) appropriately consider[] any motions for a departure"; and (3) give "meaningful consideration to the sentencing

---

[2] The Government contends that Minaya made some of the assertions underlying his cumulative error argument for the first time on appeal, and so these should be subject to plain error review. In reviewing for plain error, we "can correct an error not raised" below where: "(1) the district court erred; (2) the error was clear or obvious; and (3) the error affected the appellant's substantial rights." United States v. Foster, 891 F.3d 93, 113 n.15 (3d Cir. 2018) (quotation marks omitted). "If those three conditions are met, we then have discretion to remedy the error." Id. We conclude that Minaya's cumulative error argument fails under either standard.

factors" in § 3553(a). United States v. Freeman, 763 F.3d 322, 335 (3d Cir. 2014). The District Court correctly calculated Minaya's Guidelines range based on evidence presented at trial of the large amounts of heroin distributed by the conspiracy, correctly imposed a "manager or supervisor" role enhancement based on Minaya's activities coordinating transfers of large amounts of drugs and sums of money, and correctly added an obstruction enhancement because Minaya sent Cruz two letters clearly intended to threaten Cruz for testifying against him. And the District Court "gave meaningful consideration," id., to the factors set forth in § 3553(a) in imposing Minaya's sentence. Therefore, the sentence was procedurally reasonable.

In evaluating substantive reasonableness, we consider "whether the record as a whole reflects rational and meaningful consideration of the" § 3553(a) factors, United States v. Grier, 475 F.3d 556, 571 (3d Cir. 2007) (en banc), and we will affirm "unless no reasonable sentencing court would have imposed the same sentence . . . for the reasons the district court provided," United States v. Tomko, 562 F.3d 558, 568 (3d Cir. 2009). Minaya did not object to the District Court's consideration of the § 3553(a) factors, so we review only for plain error. See Foster, 891 F.3d at 113 n.15. Minaya fails to support his argument that his sentence was based on "erroneous facts," let alone point to factual errors that meet the plain error standard. Further, while the District Court may consider sentencing disparities between co-defendants in imposing its sentence, it is not required to do so. See United States v. Parker, 462 F.3d 273, 276–78 (3d Cir. 2006). And here, the District Court did vary downward from life to 288 months based on Minaya's co-

9

defendants having stipulated to lower drug quantities.  The sentence was also

substantively reasonable.[3]

III.

For these reasons, we will affirm the District Court's judgment of conviction and

sentence.

---

[3]  We have considered Minaya's other arguments and find them unavailing.